IN THE UNITED STATED DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | | |
|---|---|---|
| **HITACHI AMERICA, LTD.** | § | |
| | § | CASE NO. _____ |
| **Plaintiff,** | § | |
| | § | |
| V. | § | **APPLICATION** |
| | § | **TO VACATE ARBITRATION** |
| | § | **AWARD** |
| | § | |
| **AKER KVAERNER SONGER, INC. and** | § | |
| **AZCO, INC.** | § | |
| | § | |
| **Defendants.** | § | |

COMES NOW Hitachi America, Ltd. ("HAL"), by and through the undersigned counsel, and for its Application to Vacate Arbitration Award, states as follows:

## BACKGROUND AND SUMMARY OF THE PROCEEDINGS

1.      This matter and the underlying arbitration action arise out of a General Works Contract between HAL and Aker Kvaerner Songer, Inc. ("AKSI").

2.      HAL was the Engineering, Procurement, and Construction Services Subcontractor retained to construct a 790 megawatt coal-fired power plant in Council Bluffs, Iowa (the "Project").  HAL retained responsibility for engineering and procurement, but subcontracted construction activities to Defendant AKSI pursuant to the General Works Contract ("GWC"). AKSI, in turn, entered into a subcontract with AZCO, Inc. ("AZCO") for piping and certain mechanical equipment installation at the Project, including what is generally known as the Turbine Piping Work.  The GWC was incorporated into the subcontract between AZCO and AKSI.  There was no contractual relationship between HAL and AZCO.

3.      In January 2006, during the construction phase of the Project, AKSI unilaterally

and improperly terminated AZCO with respect to the Turbine Piping Work.

4.     AZCO initially instituted an arbitration proceeding against AKSI through the American Arbitration Association ("AAA") for excess costs it incurred prior to termination and for wrongful termination. In turn, AKSI filed an arbitration claim for indemnification against HAL. In a separate arbitration proceeding, HAL asserted project-wide claims against AKSI, including claims of fraud, bad faith and breach of contract. AKSI responded with its project-wide claims, and eventually the disputes between HAL and AKSI were consolidated (over HAL's objection) into the initial AZCO arbitration entitled *AZCO, Inc. v. Aker Kvaerner Songer, Inc. v. Hitachi America, Ltd.*, Case No. 51-110-Y-01947-06 (the "Arbitration").

5.     The Arbitration was bifurcated by the Panel into two phases: (1) the "Turbine Piping Claims;" and (2) the "Remaining Claims." In general the Turbine Piping Claims phase was intended to resolve all of the parties' respective claims related to AZCO's scope of work before addressing the "Remaining Claims" between AKSI and HAL only. The Turbine Piping Claims were tried before a three person Panel in Chicago, Illinois and Tysons Corner, Virginia over thirty-five days between January and June 2009. The Remaining Claims are scheduled for hearings beginning February 1, 2010.

6.     On August 6, 2009, the three-member arbitration panel (the "Panel") issued an "Interim Award" as to the Turbine Piping Claims. (A copy of the Interim Award is attached hereto as Exhibit A).[1] This Interim Award should be vacated.

7.     On its face, the Interim Award is based on an obvious and fatal misapplication of

---

[1]   Exhibit A contains two copies of the Interim Award. The first copy, issued to the parties on the date of the award, August 6, 2009, is signed by two of the three Arbitrators. The second copy of the Interim Award transmitted to the parties on August 7, 2009, bears the signature of the third Panel member. A comparison of the two copies of the Interim Award reflects that the second copy signed by the third Panel member is missing language contained in the version signed by the other two arbitrators in the second full paragraph on page three. HAL has not discovered any other differences between the two signed copies of the Interim Awards but they are different in that respect.

the law of indemnity and should be vacated on that basis alone.   As more fully described below, the Interim Award also suffers from a number of other separate and distinct defects each of which are grounds to vacate the award.

8.     The Panel found that "AKSI materially breached the Subcontract with AZCO . . . when AKSI improperly and without cause default terminated and removed AZCO from the turbine piping work" (emphasis added).  (*See* Interim Award at p. 1).

9.     The Panel found that AZCO's damages were caused by AKSI's improper termination and set the amount of damages pursuant to the early termination provisions of the GWC, as incorporated into the Subcontract between AZCO and AKSI.

10.     The Panel ordered HAL to indemnify AKSI for AKSI's wrongful conduct.  The Panel's singular citation and support for such a finding is a citation to Section 23 of the GWC which does not apply by letter or law to the Panel's holding.

11.     HAL presented to the Panel controlling, applicable Iowa law concerning indemnification.  Requiring a party to indemnify another for its wrongful conduct is, on its face, a misapplication of the law of indemnity.   In ordering HAL to indemnify AKSI for its wrongful conduct the Panel engaged in misconduct and exceeded its authority and manifestly disregarded the law.

12.     For this reason and for those set forth below, including the Panel ordering indemnification from HAL for AKSI's improper termination of AZCO despite ruling that AKSI had engaged in fraudulent conduct with respect to HAL and actionable conduct concerning the covenant of good faith and fair dealing owed to HAL, the Panel engaged in misbehavior that prejudiced HAL, exceeded and/or imperfectly executed the Panel's power and violated public policy.  The award should be vacated.  Pursuant to 9 U.S.C. §§ 9, 10, and 12, HAL respectfully

applies to this Court for an order vacating the Interim Award, and gives notice that it will timely file a formal Motion to Vacate the Arbitration Award pursuant to a briefing schedule issued by this Court or as otherwise appropriate.

## PARTIES, VENUE, AND JURISDICTION

13.     HAL is a New York corporation with its principal place of business in Tarrytown, New York, and is authorized to do and is doing business in the State of Iowa.

14.     AKSI is a Delaware corporation with its principal place of business in Canonsburg, Pennsylvania.

15.     AZCO is a Wisconsin corporation with its principal place of business in Appleton, Wisconsin.

16.     This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332(a). The amount in controversy exceeds $75,000 and the action is between citizens of different states and/or is between citizens of a state and a citizen of a foreign state.

17.     This Court has personal jurisdiction over AKSI and HAL because each signed the Subcontract for Construction and Installation of Services (the "GWC"), attached hereto as Exhibit B, which requires that arbitration of all disputes be held in Iowa. (See Exhibit B, § 33.2.3.). Further, the acts giving rise to the arbitration took place in Iowa, including AKSI's work on the Project in Iowa, and AKSI retains a registered agent for service of process in Iowa.

18.     This Court has personal jurisdiction over AZCO because the acts giving rise to the arbitration took place in Iowa, including AZCO's work on the Project in Iowa. Further, AZCO retains a registered agent for service of process in Iowa.

19.     Venue is proper in this court pursuant to 9 U.S.C. § 10, because this is the district in which the arbitration award at issue was made. Venue is also proper in this court pursuant to

28 U.S.C. §1391(a), as this is the district in which a substantial part of the events giving rise to the claims occurred.

20.    The Interim Award is subject to immediate review by this Court because:  (A) the Arbitration Panel bifurcated the claims so as to segregate AZCO turbine piping issues from other issues between AKSI and HAL in order to attempt to fully resolve the AZCO Turbine Piping Claims before considering other issues; (B) the Panel determined that it would render a separate award on the merits of factual and legal issues presented by the Turbine Piping Claims; (C) the Panel's Case Management Order No. 1, attached hereto as Exhibit C, provides for "orders on interlocutory matters," however the August 6, 2009 decision is expressly labeled an "Award;" (D) the Interim Award states that it definitely determines all of Turbine Piping Claims; (E) the Interim Award orders payments of specific sums of money "on or before August 15, 2009," and orders interest to accumulate if the payments are not made by that date; and (F) the Interim Award resolves the issue of entitlement to attorneys fees and expenses for the first phase of the bifurcated proceeding (reserving a determination of the amount for a later time).

## SPECIFIC FACTUAL ALLEGATIONS

*Background and Relationship of the Parties*

21.    In February 2003, MidAmerican Energy Company ("MEC"), the owner of the Project, retained Mitsui & Co. Energy Development, Inc. ("Mitsui") to engineer, procure, and construct the Project.  Mitsui was not a party in the Arbitration.

22.    Mitsui, in turn, retained HAL through an Engineering, Procurement, and Construction Services Subcontract (the "EPC Subcontract") to be the engineering, procurement, and construction contractor.

23.    Pursuant to the terms of the EPC Subcontract, HAL agreed to design, engineer,

install, procure, construct, test, train, and start-up the Project by a Substantial Completion

Guaranteed Date of June 1, 2007, and a Final Guaranteed Completion Date no later than nine

months later.

24.     In July 2003, HAL entered into the GWC with AKSI, whereby AKSI agreed to

perform its Scope of Work, namely the construction aspects of the Project, for a defined

"Contract Price" that included a Guaranteed Maximum Price.

25.     AKSI performed only a portion of the actual construction at the Project, entering

into subcontracts with various entities to perform critical portions of the work at the Project.

26.     AZCO was the subcontractor, retained by AKSI, responsible for piping and

certain mechanical equipment installation at the Project, including what is generally known as

the Turbine Piping Work.

*AKSI's Wrongful Termination of AZCO and Fraudulent, Bad Faith Conduct with Respect to HAL*

27.     In January 2006, AKSI improperly and without cause terminated AZCO from the

Project and replaced AZCO with McCartin McAuliffe Mechanical Contractors, Inc. ("M&M").

28.     In connection with AKSI's termination of AZCO, AKSI represented to HAL that

AZCO's financial situation was dire and that as a result AKSI did not believe AZCO could

complete the Turbine Piping Work.

29.     On or about December 29, 2005, AZCO failed to pay a fringe benefit contribution

to the Steamfitters and Plumbers Local Union 464.

30.     AZCO had in fact timely cured the default with a check dated January 3, 2006.

Nonetheless, AKSI wrongfully terminated AZCO on January 12, 2006 on the basis of the missed

but cured union payment.

31.    At the time AKSI default terminated AZCO, AKSI's General Counsel, James Tedjeske, instructed AKSI personnel not to disclose to HAL the circumstances underlying AZCO's missed union benefits payment with the intent of making HAL believe that it was HAL's fault.

32.    In connection with AKSI's termination of AZCO, AKSI and AZCO met in Houston, Texas on January 12, 2006. At the meeting AKSI "revealed" its "plan to fabricate an AZCO default" in order to create an insurance claim to achieve a "win-win" situation presumably for AZCO and AKSI. While AZCO has stated that "it would have no part of such a plan," and AZCO witnesses testified that AZCO would not participate in "insurance fraud," AZCO later signed a Memorandum of Understanding consistent with the discussions at the January 12, 2006 meeting with AKSI so that it could continue the work in the Boiler.

33.    AKSI did not terminate AZCO on the Boiler Work and thus AZCO continued to work on the Boiler portion of the Project.

34.    HAL did not participate in any way in AKSI's decision to terminate AZCO from the Turbine Piping Work.

35.    It is undisputed that AKSI's termination of AZCO was expected to, and did, cause at least a two week delay on the project for which HAL had to pay AKSI for its replacement subcontractor, M&M, to work overtime to recover the schedule.

36.    At the time AKSI improperly terminated AZCO, AKSI failed to disclose to HAL the terms of AKSI's proposed acquisition of M&M's assets and that through that transaction AKSI would benefit from sharing in the gross margins of M&M as the piping subcontractor on the Project.

37.    Specifically, during the course of the Project, AKSI negotiated an arrangement

with M&M embodied in a "Completion Agreement" that provided that AKSI would "lease back" to M&M the assets AKSI acquired from M&M in exchange for an eighty percent (80%) share of M&M's gross profits on the Project. Ultimately, that arrangement yielded AKSI in excess of $10 million in extra revenue on the Project.

38.     AKSI replaced AZCO with M&M on pricing terms (time and material) that were significantly higher than the pricing scheme under which AZCO was paid (unit rates) for Turbine Piping Work.

39.     AKSI misrepresented to HAL that M&M was suffering financially on the Project and that cause of M&M's financial difficulties was that it was being paid for Turbine Piping Work in the same manner as AZCO had been prior to AZCO's termination by AKSI (SOV unit rates). M&M was being paid time and materials and was not in financial difficulty on the Project.

40.     AKSI and M&M threatened to slow down work in a successful campaign to force HAL to pay AKSI for M&M's work at higher rates to cover the difference between the AZCO pricing structure (unit rates) and the terms on which AKSI retained M&M to replace AZCO.

*The Turbine Piping Claims - Interim Award*

41.     In Section I of the Interim Award entitled "AZCO's Claims against AKSI for AKSI's Improper Termination of AZCO from the Turbine Piping, and AKSI's Counterclaims against AZCO," the Panel found:

> In January 2006, **AKSI materially breached the Subcontract with AZCO** in connection with the above-ground turbine piping work, **when AKSI improperly and without cause default terminated and removed AZCO from the turbine piping work.** Such termination was based on AZCO's alleged failure to make a union benefit payment at the end of December 2005. AZCO objected to its termination. **AKSI's default termination of AZCO** from the turbine piping **was improper,** as the alleged failure of AZCO was excusable and timely cured.

*   *   *

**As a result of AKSI's improper termination**, AZCO is entitled to recover from AKSI, pursuant to Section 19 of the GWC ("Early Termination"), the sum of Nine Million, Six Hundred Seventy-Five Thousand, Ninety Seven Dollars ($9,675,097.00), which is made up of AZCO's actual, demonstrable and reasonable costs, Subcontract balance, retainage, valid outstanding change order claims (approved and un-approved) and fifteen percent (15%) mark-up on work not covered by change order/extra work order requests.

(Interim Award at pp. 1-2) (emphasis added).

42.    The Panel also awarded AZCO $199,746.00 as prejudgment interest.  Thus, the total monetary award to AZCO was $9,874,843.00.

43.    In Section II of the Interim Award entitled "AKSI's Turbine Piping Indemnity Claims and Unpaid GWC Claim Against HAL," the Panel found:

Pursuant to Section 23.1 of the GWC, AKSI is entitled to be reimbursed by HAL for amounts, as determined by the Panel, that AKSI is obligated to pay AZCO which directly or indirectly result from the breaches of HAL's obligations, **except for matters and items that are AKSI's responsibility**.  AKSI's indemnity claim against HAL is GRANTED, and AKSI shall recover against HAL the sum of $8,622,175.00 on AKSI's net indemnity claim.  The Panel further determines that AKSI's indemnity claim is not barred by Amendment 7 to the GWC.

(Interim Award at p. 4) (emphasis added).

44.    In Section III of the Interim Award entitled "HAL's Turbine Piping Claims Against AKSI," the Panel found:

HAL has also asserted a claim for fraud.  The Panel determines that although **AKSI engaged in a deceptive charade** in claiming that M&M was losing money on SOV unit rates for above-ground turbine piping in April and May 2006 **and in failing to disclose AKSI's interest in M&M's gross margin on the above-ground turbine piping work**, HAL has not carried its burden to prove every element of actionable fraud.  The Panel was troubled by **the deceptive acts and falsehoods of AKSI and M&M officers**, but the evidence of reliance and causation fell short of meeting HAL's burden of proof.  HAL's fraud claim is **DENIED**.

Similarly, while the Panel found AKSI's conduct challenged the covenant of good faith and fair dealing implied under Iowa law in a contractual setting, the evidence did not demonstrate the nexus of causation between **AKSI's actionable**

**conduct** and measureable damages to HAL, nor support HAL's damage calculation methodology. HAL failed to carry its burden of proof on this cause of action, and HAL's claim for AKSI's breach of the implied covenant of good faith and fair dealing is **DENIED**.

(Interim Award at p. 6) (emphasis added).

45.    Thus, despite finding that AKSI's Officers engaged in deceptive acts and falsehoods with respect to HAL, the Panel ordered HAL to indemnify AKSI in the amount of $8,622,175.00 for AKSI's wrongful termination of AZCO. (*See* Interim Award at p. 4).

## COUNT I

*(The Interim Award Should Be Vacated Because The Panel Engaged In Misbehavior and/or Exceeded Its Powers By Ordering HAL to Indemnify AKSI for AKSI's Own Wrongful Act)*

46.    HAL realleges and incorporates all of the allegations previously made herein.

47.    A court may vacate an arbitration award when the arbitrators are guilty of "any other misbehavior by which the rights of any party have been prejudiced." (*See* 9 U.S.C §10(a)(3)).

48.    A court may vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." (*See* 9 U.S.C §10(a)(4)). The Panel was empowered and obligated by the parties' contract to apply the laws of Iowa to said contract and the controversies brought before it. The Panel was informed of and shown applicable Iowa law regarding indemnification and imperfectly executed its powers by manifestly disregarding said applicable law. Moreover, such action exceeded the Panel's powers and violated public policy.

49.    At the conclusion of AKSI's defense of AZCO's wrongful termination claim, but prior to the conclusion of the Turbine Piping Claims hearings, AZCO orally moved for an order that: (1) AKSI's termination of AZCO was wrongful and without any factual or contractual

basis; (2) as a result of AKSI's wrongful termination of AZCO, AZCO is entitled to actual costs plus 15 percent overhead on all costs of performing work on the turbine through the date of AZCO's cessation on the turbine work; (3) AKSI's counterclaims against AZCO be dismissed with prejudice; and (4) AZCO be awarded its attorneys' fees, costs, and expenses of the Arbitration ("AZCO's Motion").

50.    In conjunction with AZCO's Motion, HAL also moved for an order that AKSI had no legal or contractual basis for seeking indemnification from HAL for damages stemming from AKSI's wrongful and unjustified termination of AZCO from the Project.

51.    AKSI presented no legal or contractual basis for HAL to indemnify AKSI for AKSI's unilateral decision to wrongfully terminate AZCO from the Project.

52.    The Panel's sole basis for awarding indemnification was Section 23.1 of the GWC which excludes "matters expressly made Contractor's [*i.e.*, AKSI] responsibility" from HAL's indemnity obligations under the GWC.

53.    Section 23 of the GWC does not require HAL to indemnify AKSI for damages incurred as a result of AKSI's own intentional misconduct, *e.g.*, AKSI's improper, unilateral termination of AZCO or for "matters expressly made Contractor's responsibility" (*e.g.*, AKSI's subcontractors). (*See generally,* Exhibit B, § 23).

54.    Neither AZCO nor AKSI offered any evidence that demonstrated, and the Panel issued no order holding that, AKSI's unilateral decision to wrongfully terminate AZCO arose out of any breach by HAL of its representations, warranties, and obligations under the GWC.

55.    The GWC required that "notwithstanding the AAA Rules," the Panel was required to apply Iowa law in resolving the dispute between the parties. (*See* Exhibit B, §33.2.1, 35.2).

56.     HAL advised the Panel, and the Panel knew, that there was no basis under either the plain language of the GWC or black-letter Iowa law to require HAL to indemnify AKSI for AKSI's unilateral and wrongful termination of AZCO.

57.     The Panel did not award AZCO damages for excess costs incurred as a result of any breach of the GWC by HAL. Instead, the Panel expressly found that AZCO damages were recoverable pursuant to the Early Termination provisions contained in Section 19 of the GWC, which provides that a party wrongfully terminated can recover all of the unpaid costs plus fifteen percent (15%) for overhead and profit. (Exhibit B, § 19.1.2).

58.     The Panel found that AZCO was entitled to recover damages in excess of $9 million from AKSI "pursuant to Section 19 of the GWC ('Early Termination')." (Interim Award at p. 2). That portion of the Panel's award to AZCO is consistent with its conclusion that "AKSI materially breached the Subcontract with AZCO in connection with the above-ground turbine piping work, when AKSI improperly and without cause default terminated and removed AZCO from the turbine piping work." *(Id.* at p. 1).

59.     The Panel's conclusion that HAL must indemnify AKSI is inconsistent because there was no evidence, and the Panel did not find, that HAL played any part in AKSI's wrongful termination of AZCO. As the Panel found, HAL's indemnity obligations extend only to amounts that "directly or indirectly result from breaches of HAL's obligations" and do not include "matters and items that are AKSI's responsibility." *(Id.* at p. 4). Since the Panel held that AZCO's damages arose "[a]s a result of AKSI's improper termination," and not because of any breach by HAL of its obligations, the wrongful termination of AKSI's subcontractor was "AKSI's responsibility" and the Panel was necessarily precluded from ordering HAL to indemnify AKSI.

60.     The Panel ruled that AKSI terminated AZCO based on AZCO's alleged failure to make a union benefit payment but that the alleged failure was excusable and timely cured. Thereafter, the Panel's conclusion that AZCO "found itself in the precarious financial condition at the end of 2005 due to the actions and omissions of HAL" is, on its face, relevant to neither the finding of wrongful termination nor AZCO's damages which must flow from the wrongful termination by AKSI. (Interim Award at p. 2).

61.     The indemnification provision of the GWC is well-defined, explicit, and unambiguous, and under no construction requires HAL to indemnify AKSI for AKSI's own improper acts. Further, Iowa law is well-defined and unambiguous and cannot be construed to impose any obligation on HAL to indemnify AKSI for AKSI's own improper acts. Moreover, ordering HAL to indemnify AKSI in this instance violates public policy against indemnifying a wrongdoer for its misdeeds. The Panel was notified by HAL of the applicable Iowa law with regard to indemnification on several occasions.

62.     Without any explanation as to how the Panel reached its decisions in the Interim Award or how the Panel determined that AKSI is possibly entitled to be indemnified by HAL as a result of AKSI's own deceptive acts and decision to wrongfully and without cause terminate AZCO, the Panel ordered HAL to indemnify AKSI.

63.     As such, the Panel exceeded and/or imperfectly executed its powers and engaged in misbehavior which prejudiced HAL's rights when it ignored black letter law on indemnification and the express provisions of the GWC in ordering HAL to indemnify AKSI the sum of $8,622,175.00 for damages AKSI was ordered to pay as a result of AKSI's unilateral decision to wrongfully terminate AZCO.

64.     The Panel found that AKSI engaged in "deceptive" conduct and that its officers

told "falsehoods." The Panel found, however, that HAL failed to establish every element of fraud and specifically reliance and causation. HAL therefore established the other five elements of fraud under Iowa law, to wit: (1) a representation or representations; (2) falsity; (3) materiality; (4) scienter; and (5) intent to deceive.

65. The Panel also found that AKSI engaged in "actionable conduct" with respect HAL's claim that AKSI breached its covenant of good faith and fair dealing.

66. Those factual findings are a breach of the implied duty of good faith and fair dealing in the performance of the GWC and are a material breach of the GWC under Iowa law regardless whether HAL satisfied its burden to demonstrate the nexus between causation and measureable damages.

67. Notwithstanding the Panel's failure to find damage flowing from such findings, such findings and corresponding breach of the GWC necessarily renders section 23 of the GWC unenforceable against HAL or, in the alternative, discharges HAL of any duty to indemnify AKSI as the party in breach.

68. Accordingly, pursuant to 9 U.S.C. § 10(a)(3) and (4), the Interim Award should be vacated.

## COUNT II

*(The Interim Award Should Be Vacated Because The Panel Improperly Prevented Discovery and Presentation of Key Evidence)*

69. HAL realleges and incorporates all of the allegations previously made herein.

70. The Panel further exceeded or imperfectly executed its power by denying HAL's claims for fraud and bad faith after refusing HAL the opportunity to obtain and present evidence of AKSI's fixed-cost data, evidence which the Panel knew was relevant to HAL's fraud and bad faith claims.

71.    Specifically, the Panel improperly ruled that the GWC precludes an audit of costs which were fixed or otherwise agreed upon by the parties. (*See* Case Management Order No. 2, attached hereto as Exhibit D).

72.    The Panel also denied HAL's attempt to secure the same information through the discovery process permitted in these proceedings save for a limited review of certain extracted cost data. (*See* Case Management Order No. 7, attached hereto as Exhibit E).

73.    Those combined rulings impaired HAL's ability to prosecute its Turbine Piping Claims and prevented HAL from presenting, and the Panel from hearing, evidence pertinent and material to HAL's fraud and bad faith claims against AKSI.

74.    Notwithstanding the Panel's rulings denying HAL the ability to obtain and present evidence of AKSI's fixed-cost data in support of HAL's fraud and bad faith claims against AKSI, the Panel denied HAL's fraud and bad faith claims because HAL failed to present evidence showing reliance or causation – evidence which could have been presented if the Panel had allowed discovery of such evidence from AKSI.

75.    Because the Panel refused to allow HAL to obtain and present evidence of AKSI's fixed-cost data in support of HAL's fraud and bad faith claims, the Panel's denial of HAL's fraud and bad faith claim was improper and patently unfair.

76.    By refusing HAL the opportunity to discover and present evidence pertinent and material to the controversy and not protected by a legitimate privilege, the Panel exceeded and/or imperfectly executed its powers and engaged in misconduct which prejudiced HAL's rights.

77.    On this basis, and pursuant to 9 U.S.C. § 10(a)(3) and (4), the Interim Award should be vacated.

## COUNT III

*(The Interim Award Should Be Vacated Because The Panel Exceeded Its Powers by Failing to Follow The Express Terms of The GWC)*

78.    HAL realleges and incorporates all of the allegations previously made herein.

79.    The GWC expressly provides that the Panel is required to issue "a written explanation of their decision with respect to all disputes that were arbitrated." (*See* Exhibit B, at § 33.2.3).

80.    The Panel knew, as a result of its Case Management and Scheduling Order No. 1, that their powers required them to set forth the basis of the Panel's decision. (*See generally* Exhibit C).

81.    Case Management and Scheduling Order No. 1 requires, as part of the Panel's power, that the Panel provide "a concise breakdown of their Award, setting forth the basis of the Arbitrators' determinations, based on the evidence presented . . . ." (*See* Exhibit C at §C(4)(a) (emphasis added)).

82.    The Panel failed to provide a written explanation of their decision with respect to all disputes that were arbitrated to wit - AZCO's damages, HAL's breach of contract claim, the application of a contractual release, and the applicable standards for causation and damages. Accordingly, the Panel failed to execute the powers, duties and responsibilities imposed upon them by the GWC, and failed to abide by the rules under which the parties agreed the arbitration would be conducted and their disputes resolved.

83.    On this basis, and pursuant to 9 U.S.C. § 10(a)(3) and (4), the Interim Award should be vacated.

*The Panel Failed To Explain The Basis for AZCO's Damages*

84.     The Panel failed to provide any basis, let alone a rational basis, to justify the amount of the indemnification award. The damage award on its face does not tie to any of the various damage models offered by AZCO.

85.     AZCO's Closing Argument and Trial Exhibit 1000 (Revised) set forth the excess costs AZCO sought to recover in the Arbitration. Specifically, AZCO sought $8,874,057 total "marked-up costs" in excess of the Project Billings. AZCO also sought retainage withheld by AKSI totaling $1,498,963.

86.     AKSI did not oppose AZCO's claim for retainage.

87.     The Panel found that AZCO was entitled to recover "the sum of Nine Million Six Hundred Seventy-Five Thousand, Ninety Seven Dollars ($9,675,097.00), which is made up of AZCO's actual, demonstrable and reasonable costs, Subcontract balance, retainage, valid outstanding change order claims (approved and unapproved) and fifteen percent (15%) mark-up on work not covered by change order/extra work order requests." (Interim Award at p. 2).

88.     HAL offered undisputed evidence that it had already paid AKSI for some of the outstanding change order claims sought by AZCO and that the GWC expressly allocated to AKSI financial responsibility for other distinct itemized costs sought by AZCO.

89.     The Panel held that AKSI was entitled to indemnity in the amount of $8,622,175.00. This amount "is net of, among other items, change order work that were paid by HAL to AKSI but not paid by AKSI to AZCO." (Interim Award at p. 4, fn. 1). Thus, HAL was ordered to indemnify AKSI for all but $1,252,668 of the amount awarded to AZCO.

90.     The Panel exceeded and/or imperfectly executed its powers, and engaged in misbehavior which prejudiced HAL's rights, by failing to identify what items from the amount

awarded to AZCO from AKSI were included in the sum of $8,622,175.00. (*See generally,* Exhibit A).

91.    The amount of retainage withheld by AKSI ($1,498,963) plus the amount of indemnity awarded to AKSI ($8,622,175.00) exceed AZCO's total excess cost claim and thus the total AKSI could have sought from HAL for indemnity.

92.    As a result of the Panel's monetary award, the Panel exceeded and/or imperfectly executed its powers, and engaged in misbehavior which prejudiced HAL's rights.

93.    On this basis, and pursuant to 9 U.S.C. § 10(a)(3) and (4), the Interim Award should be vacated.

### *The Panel Failed to Rule on HAL's Breach of Contract Claim*

94.    HAL also brought a claim against AKSI for breach of contract stemming from AKSI's failure to complete work per the terms of the GWC to allow Substantial Completion and Final Completion of the Project by the Substantial Completion Guaranteed Date, Final Completion Guaranteed Date, and/or applicable Project Guaranteed Dates.

95.    The Panel was required to provide a written explanation "of the basis of their decision with respect to all disputes that are arbitrated." (*See* Exhibit B at § 33.2.3).

96.    Pursuant to the terms of the GWC, AKSI was obligated to diligently pursue the work in a manner that would allow the Project to be substantially completed on or before the Substantial Completion Guaranteed Date and obtain final completion on or before the Final Completion Guaranteed Date. (*See* Exhibit B, §8.1.1.1.2).

97.    The GWC obligated AKSI to complete its work at the Project so as to allow Substantial Completion and Final Completion of the Project on or before the applicable Project Guaranteed Dates. (*See* Exhibit B, §8.3).

98.     The GWC provides that AKSI is deemed to have abandoned the work on the Project if AKSI "has substantially reduced personnel at the Site or removed required construction equipment from the Site or failed to undertake or maintain efforts to complete items of Work such that, in the opinion of an experience construction manager, [AKSI] would not be capable of maintaining progress in accordance with the Critical Path Schedule and achieving Substantial Completion by the Final Completion Guaranteed Date for reasons solely attributable to the fault of [AKSI]."  (*See* Exhibit B, § 18.1(i)).

99.     The Panel exceeded and/or imperfectly executed its powers, and engaged in misbehavior which prejudiced HAL's rights, by failing to provide a ruling on HAL's claim for breach of contract against AKSI.

100.    On this basis, and pursuant to 9 U.S.C. § 10(a)(3) and (4), the Interim Award should be vacated.

### *The Panel Failed to Explain the Basis for Rejecting HAL's Reliance on an Express Contractual Release*

101.    Early in the construction phase of the Project, construction activities were delayed because of a number of factors.

102.    Effective August 1, 2005, the parties entered into a release to settle all claims, both known and unknown, for themselves and any subcontractors.

103.    The provisions of the release were clear and unambiguous in that claims by AKSI or its subcontractors for inefficiencies were released.  The Panel knew of the terms and provisions of the release language and obligations of the release.

104.    In a one sentence statement, with no explanation, the Panel simply concluded that the release did not apply to the subcontractor claims.

105.    The Panel exceeded and/or imperfectly executed its powers, and engaged in

misbehavior which prejudiced HAL's rights, by failing to explain or provide a ruling on HAL's claim that the provisions of the release were clear and unambiguous in that claims by AKSI or its subcontractors for inefficiencies were released.

106.    On this basis, and pursuant to 9 U.S.C. § 10(a)(3) and (4), the Interim Award should be vacated.

### The Panel Applied Improper And Inconsistent Causation and Damage Standards

107.    HAL realleges and incorporates all of the allegations previously made herein.

108.    The Panel found that AZCO was harmed by AKSI's wrongful termination. Because HAL was the Engineering, Procurement, and Construction Services Subcontractor on the Project, the Panel's finding of wrongful termination by AKSI necessarily means that HAL was also harmed by AKSI's wrongful conduct.

109.    HAL presented evidence to support the damages HAL incurred resulting from AKSI's wrongful termination of AZCO.

110.    The Panel further found that AKSI engaged in "actionable conduct" with respect to HAL's bad faith claim.

111.    HAL offered the Panel alternate forms of damages all of which were undisputed by AKSI.

112.    The Panel knew that under Iowa law that it had the power to fashion any appropriate remedy once it found actionable conduct.

113.    The Panel did not explain in any manner why it rejected HAL's evidence, or the basis on which it awarded AZCO for its damage caused by AKSI and none to HAL *for the same conduct by AKSI*.  It is clear the Panel exceeded its authority by applying improper legal standards to HAL's claims.

114.    In doing so, the Panel engaged in misbehavior which prejudiced HAL's rights

and/or exceeded its power by ignoring Iowa law and applying disparate legal standards to HAL's claims.

115.    On this basis, and pursuant to 9 U.S.C. § 10(a)(3) and (4), the Interim Award should be vacated.

**WHEREFORE**, Hitachi America, Ltd. prays this Court for relief as follows:

A.    HAL requests that the Court vacate the Interim Award as to Turbine Piping Claims in its entirety;

B.    For an award of all of HAL's costs and expenses incurred in connection with this action and the Arbitration, including its reasonable attorneys' fees; and

C.    For such other and further relief as the Court deems just and proper under the circumstances.

Dated:  September 15, 2009                    Respectfully submitted,


**FAEGRE & BENSON LLP**

By /s/ Ross W. Johnson
Ross W. Johnson, Lead Counsel
     *E-mail: rwjohnson@faegre.com*
Andrew Anderson
     *E-mail: aanderson@faegre.com*
801 Grand Ave, Suite 3100
Des Moines, IA 50309-8002
Telephone: (515) 248-9000
Facsimile: (515) 248-9010

**ATTORNEYS FOR HITACHI AMERICA, LTD.**

Of Counsel

James D. Thomas
Squire, Sanders & Dempsey L.L.P.
200 South Biscayne Boulevard, Suite 4000
Miami, Florida 33131
305.577.7000 Telephone
305.577.7001 Facsimile
jdthomas@ssd.com

and

Steven B. Harris
Greg R. Wehrer
Squire, Sanders & Dempsey L.L.P.
6200 Chase Tower
600 Travis Street
Houston, Texas 77002-3000
713.546.5850 Telephone
713.546.5830 Facsimile
sharris@ssd.com
gwehrer@ssd.com

and

Brian M. McQuaid
Squire, Sanders & Dempsey L.L.P.
Two Renaissance Square
40 North Central Avenue, Suite 2700
Phoenix, Arizona 85004-4498
602.528.4000 Telephone
602.253.8129 Facsimile
bmcquaid@ssd.com

fb.us.4400725.01